UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DAVID KEITH PARRIS,

      Petitioner,

v.                                  Case No. 5:20cv4-TKW-HTC

SECRETARY DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner David Keith Parris, through counsel, filed a petition under 28 U.S.C. § 2254 challenging his conviction in the circuit court of Bay County, Florida, for lewd and lascivious molestation, sexual battery, and lewd and lascivious conduct on a child less than 12 years of age, in case 2014-CF-1736. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition, the record, the State's response, ECF Doc. 12, and Petitioner's reply, ECF Doc. 16, the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    Offense and Conviction

On August 4, 2015, Petitioner was convicted after a jury trial of lewd and lascivious molestation of K.H., his then girlfriend's seven-year-old granddaughter, who he was babysitting on the night of the incident. Verdict, ECF Doc. 12-2 at 119, *State v. Parris*, 2014 CF 1736 (14th Jud. Cir. Ct. Bay Co., Fla.). The following evidence is taken from the trial transcript. *See* ECF Docs. 12-3 through 12-5.

At trial, K.H.'s mother testified that, on May 25, 2014, she, her daughter, and her 5-year-old son[1] were spending the weekend at the K.H.'s grandmother's apartment in Bay County, where the Petitioner also lived. ECF Doc. 12-3 at 213-15. After putting the children to bed, the mother, aunt and grandmother went out to play bingo. *Id.* Petitioner stayed home with the children.

The grandmother testified that when the women returned, the grandmother entered first to a completely darkened apartment and was surprised Petitioner was not in their bedroom. *Id.* at 384. Instead, she found Petitioner and K.H. in the darkened bedroom, feeling around on the bed, which she found odd. *Id.* at 354-55 & 386-87. K.H. and Petitioner explained they were searching for a charger cord for her electronic tablet, but Petitioner had "a concerned look or a look on his face that that wasn't normal." *Id.* at 387. The grandmother also testified that, later, when

---

[1] The victim's aunt and her 2-year-old son were also staying there that weekend.

Petitioner returned to bed with her, he did not engage her as would have been typical, but merely rolled over like something was bothering him, which further aroused her suspicions that something may have happened between Petitioner and K.H.  *Id.* at 356.

The next day, the grandmother, still concerned about Petitioner's behavior the previous night, called K.H.'s mother and told her she was concerned something may have occurred between Petitioner and K.H.  *Id.* at 219.  While the mother was with K.H. and her younger brother at a drive-through, the mother asked K.H. what she and Petitioner did the night before.  K.H. responded, "He loves me, Mommy."  *Id.* When the mother asked for details, K.H. declined at first, stating, "[I]t's our secret." *Id.* at 220.  After the mother reassured K.H. she could tell her mother anything, K.H. confided that "he was kissing me all over."  *Id.*  K.H. continued by saying he kissed her on "her cheek and her ear . . . and her neck and across here."  *Id.*  On cross-examination, the mother specified that the child pointed to "her clavicle area, upper chest or breasts" in addition to her head and checks, to indicate where he was kissing her.  *Id.* at 230.

Because K.H.'s younger brother was also in the car, the mother did not ask any more questions until they got home.  *Id.*  Once home, the mother continued the conversation with K.H.  The victim repeated where she had been kissed, and then the mother asked if that was all.  K.H. stated, "I don't want to tell you, it's gross." *Id.* at 221.  Eventually, K.H. stated he "touched my pee-pee."  *Id.*

That day, the mother contacted law enforcement, *id.* at 221-15, and the next day Detective Schubert interviewed the mother and the child. *Id.* at 343. The following day, the parents brought K.H. back to Bay County where she was interviewed by a child forensic interviewer at the Children's Advocacy Center. *Id.* at 242 (Transcript of Interview as played for jury during trial). During the interview, K.H. stated that while the women were gone, she and the Petitioner (who she called Keith) were "snuggling like Keith loves me or something," *id.* at 252, in a reclining rocking chair in the living room, *id.* at 258. He then told her he loved her, kissed her, and "was rubbing [her] pee-pee. . . . and that's disgusting." *Id.* After the interviewer verified with K.H. that "pee-pee" meant her vaginal area, K.H. explained that Petitioner had touched her vagina with his finger, under her pajama pants and pullup, that she felt his skin touch her skin, and that "it hurt a lot" when he was rubbing her "tee-tee." *Id.* at 261-62. She explained that he "kissed me . . . [a]nd rubbed my tee-tee at the same time", *id.* at 258, until she told him to stop. *Id.* at 255. He did stop, but also said to her, "Don't tell nobody." *Id.* At trial, after the jury watched the video of her interview with the child forensic interviewer, K.H. testified. *Id.* at 266. Her testimony at trial was mostly consistent with her statements in the interview.

After the child forensic investigation, Petitioner was arrested and interviewed by Detective Shubert. *Id.* at 331. The video of the detective's interview was played for the jury. *Id.* (Transcript of interview). Petitioner admitted during the interview

that K.H. was on his lap on the recliner. *Id.* at 335. However, he insisted did not touch her and that, if he kissed her at all, it was "on the top of the head." *Id.* When Petitioner was asked why he thinks K.H. would say otherwise, Petitioner answered, "I don't know" and "Oh, I don't know, I think her mama is sticking something in her head, because I haven't, there's definitely nothing going on." *Id.* at 336. When asked why the mother would come up with this, Petitioner answered, "I don't understand either, I have no idea." *Id.* at 337.

The jury also heard various phone calls from the jail between Petitioner and the grandmother, which appear to contradict the statements he made to Detective Schubert. *Id.* 292. During those calls, Petitioner told the grandmother he had fallen asleep in the recliner with K.H. on his lap, awoken with his hand between K.H.'s legs, and told K.H. that it "was our secret" because he knew that K.H.'s mother would "go the f* off" if she found out. *Id.* at 376. He insisted he did not "mess with that young'un." *Id.* In one call, he stated, "I was asleep and when I woke up, that's where my hand was. I wasn't, I wasn't in her or nothing like that. I told her I'm sorry and that that's gonna be our secret, because goddamn Leigh Ann and them would have a fit." ECF Doc. 12-4 at 38.

After the state's case, the defense rested without calling any witnesses and without any testimony from Petitioner. Petitioner was found guilty and sentenced on August 14, 2015, to 25 years' imprisonment and life sex offender probation. ECF Doc. 12-3 at 132.

**B.    Postconviction History**

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a petition must be filed within one-year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[2]   Additionally, the one-year time period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Petitioner appealed his judgment to the First District Court of Appeals ("First DCA"), which affirmed *per curiam* without a written opinion on October 5, 2016. ECF Doc. 12-5 at 190; Case No.: 1D15-4162.  Petitioner did not seek review in either the United States or Florida Supreme Court, ECF Doc. 1 at 2, so the judgment of conviction became final ninety (90) days later, on January 3, 2017.

The AEDPA one-year limit ran until August 16, 2017, when Petitioner filed a Motion for Postconviction Relief under Rule 3.850.  ECF Doc. 12-4 at 149.  The post-conviction motion remained pending until August 26, 2019, when the First DCA issued its mandate affirming the circuit court's denial of the motion.  ECF Doc.

---

[2] Although there are other "trigger" dates under the AEDPA, none of those apply here.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

12-5 at 285. The instant petition was filed on January 3, 2020, before 365 days had

run on the AEDPA clock. Therefore, the petition was timely filed.

## II.   LEGAL STANDARDS

### A.   The AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28

U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated

on the merits in state court if the adjudication (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

This standard is both mandatory and difficult to meet. *White v. Woodall*, 572

U.S. 415, 419 (2014). "Clearly established federal law" consists of the governing

legal principles set forth in the decisions of the United States Supreme Court when

the state court issued its decision. *Id*. A decision is "contrary to" clearly established

federal law if the state court either: (1) applied a rule that contradicts the governing

law set forth by Supreme Court case law; or (2) reached a different result from the

Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*,

592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme

Court precedent if the state court correctly identifies the governing legal principle,

but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## B.    Ineffective Assistance of Trial Counsel Claims ("IATC")

Petitioner's ten (10) grounds of relief are premised on ineffective assistance of trial counsel. An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The Petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

To show counsel's performance was unreasonable, a defendant must show "no competent counsel would have taken the action that his counsel did take." *Hollis v. United States*, 958 F. 3d 1120, 1122 (11th Cir. 2020) (citation omitted). It is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy. *Harrington*, 562 U.S. at 111.

To establish prejudice, a defendant must show, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Jenkins v. Comm'r, Ala. Dep't of Corr.,* 963 F. 3d 1248 (11th Cir. 2020) (quoting *Harrington*, 562 U.S. at 112). A petitioner must allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. A petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations of prejudice are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.   DISCUSSION

Petitioner raised each Ground below in his 3.850 motion; thus, each is exhausted. Because the First DCA affirmed the state court's denial of the motion without a written opinion, the Court will "look through" the First DCA decision to the state court's 3.850 order denying relief for the state's rationale. *Wilson v. Sellers,* 138 S. Ct. 1188, 1192 (2018). As discussed below, the undersigned finds Petitioner fails to meet his burden of showing that the state court rulings were contrary to or an

unreasonable application of *Strickland* or were based on an unreasonable factual finding in light of the evidence developed in state court.

A.    **Ground One: IATC for Failing to Object and Move for a Dismissal When the State Withheld Evidence in Violation of *Brady v. Maryland*.**[3]

Petitioner alleges counsel was ineffective for failing to object and move for a dismissal when the State failed to preserve a pullup diaper worn by K.H. on the night of the incident.  K.H.'s mother testified she took a pullup off K.H. when she got home that evening and threw it in the trash.  Petitioner alleges it was Detective Shubert's responsibility to search the residence and collect evidence, but he failed to retrieve the pullup.  Petitioner alleges he suffered prejudice by the State's failure to produce the pullup, which could have tested for DNA, the results of which would have shown (1) that Petitioner's DNA was not inside the pullup thereby demonstrating his hand was not inside the pullup touching the victim's vagina as alleged and (2) the pullup was not stretched out thus demonstrating his hand did not reach inside of it to touch the victim's vagina.

The state court denied relief on this claim, finding Petitioner's claim the State failed to preserve evidence was a due process, rather than a *Brady* claim, and to succeed on the claim Petitioner must show the State exercised in bad faith, which he had not done, or that the evidence was materially exculpatory, which he also has not

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

done.  *See Arizona v. Youngblood*, 488 U.S. 51 (1988).  Detective Shubert testified he was unaware of the pullup until he heard about it at trial.  Detective Shubert also testified the pullup would unlikely make a difference because Petitioner's DNA could be there simply because he changed the pullup.  Based on the Detective's testimony, the state court determined the State did not intentionally destroy or fail to preserve evidence that he believed would exonerate Petitioner.  On habeas review, any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").  Petitioner has not met that burden here.

Petitioner argues the state court erred in finding the pullup was not materially exculpatory and, thus, in requiring bad faith by the State.  "'Materially exculpatory' evidence is evidence that might be expected to play a significant role in the suspect's defense.  'Potentially useful' evidence, by contrast, is evidence that merely poses some likelihood of helping to exonerate a defendant."  *State v. Miller*, 159 So. 3d 992, 994 (Fla. 5th DCA 2015).  As the court correctly determined, Petitioner's claim was "only speculative" that an examination of the pullup would have led to exculpatory information." *Wright*, 761 F.3d at 1281.  The identity of the person who allegedly committed the offense at issue was not in doubt, and the lack of DNA from

Petitioner would not have disproved the State's theory of guilt.  ECF Doc. 12-5 at 196-97.  Also, the detective did not know about the pullup at the time of the offense and, thus, "did not intentionally destroy, or fail to collect and preserve, evidence that he believed would exonerate the Defendant."  ECF Doc. 12-5 at 196.

Since the pullup was not materially exculpatory evidence, any *Brady*[4] claim or due process claim would have been denied.  *See McLean v. State*, 147 So. 3d 504 (Fla. 2014) (concluding that allegations that a tape recording was of potential exculpatory or impeaching value to a defendant's case was completely speculative, and postconviction relief cannot be based on mere speculation); *cf. Lambrix v. State*, 124 So. 3d 890, 896 (Fla. 2013) ("[A] trial court does not err in denying a motion for DNA testing where the defendant cannot show that there is a reasonable probability that the absence or presence of DNA at a crime scene would exonerate him or lessen his sentence.").  And an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted). Petitioner is not entitled to relief on Ground One.

---

[4] To establish a *Brady* claim, a petitioner must demonstrate: "(1) that the prosecution suppressed evidence (2) that was favorable to the [petitioner] or exculpatory and (3) that the evidence was material." *United States v. Blasco*, 702 F.2d 1315, 1327 (11th Cir. 1983) (citation omitted).  "[A] *Brady* claim fails when it is only speculative that the materials at issue would have led to exculpatory information."  *Wright v. Sec'y Fla. Dep't of Corr.,* 761 F.3d 1256, 1281 (11th Cir. 2014).

**B.    Ground Two: IATC for Failure to File a Motion for New Trial Arguing That the Verdict Was Contrary to the Weight of the Evidence.**

Petitioner argues counsel was ineffective for failing to move for a new trial based on the weight of the evidence.  In the 3.850 motion, Petitioner argued the State only had the testimony of a seven-year-old on which to base an allegation of molestation without any corroboration of the child's statements.  There were no other witnesses and no physical evidence of molestation.  When the Petitioner was interviewed by Detective Schubert, he denied touching the child inappropriately.  During the jail calls, the Petitioner put forth a reasonable hypothesis of innocence that he was asleep with child in his lap and when he woke up his hand was between her legs, but he did not "mess with" her.

To obtain relief on this Ground, Petitioner must show a reasonable probability that, but for counsel's failure to move for a new trial, the result of his criminal proceeding would have been different.  *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").  Under Florida law, a motion for new trial challenges whether the "verdict is contrary to law or the weight of the evidence."  Fla. R. Crim. P. 36.00(a)(2).  Trial counsel's mere failure to file a motion for new trial is not per se ineffective assistance of counsel.  *Williams v. State*, 553 So.2d 309, 309 (Fla. 1st DCA 1989).  Instead, even if counsel was deficient for not filing the motion, prejudice must have occurred.  That is, the underlying facts of the case must establish a "reasonable probability that the judge would have granted

a new trial if defense counsel had filed the proper motion based on the weight of the evidence." *Lamb v. State*, 124 So. 3d 953, 957 (Fla. 2d DCA 2013); *see also Manley v. State*, 605 So. 2d 1327, 1328 (Fla. 2d DCA 1992) (denying postconviction relief because no "strong likelihood a new trial would have been ordered").

In this case, no reasonable judge would have granted a motion for new trial. To prove the charged crime of lewd or lascivious molestation, the State had to prove the following elements beyond a reasonable doubt: (1) the victim was less than 12 years of age; (2) the Petitioner in a lewd or lascivious manner intentionally touched her breasts, genitals, genital area, or buttocks, or the clothing covering the breast, genitals, genital area, or buttocks; (3) Petitioner was 18 years of age or older at the time of the offense. Fla. Stat. § 800.04(5)(a).  Only the second element was at issue in this case, and the State offered the following testimony to prove that element: (1) the child's grandmother testimony about Petitioner's suspicious conduct that night; (2) K.H. told her mother Petitioner kissed her all over, said he loved her, touched her "pee-pee" and told K.H. "it's our secret" and not to tell; (3) the child's interview with the child forensic interviewer played to the jury corroborated what she had told her mother; and (4) the recorded phone calls between the grandmother and Petitioner were contrary to his assertion that he had no idea why the child and the child's mother made up the story about him.

Given the evidence presented to the jury, the circuit court did not err in concluding "there is no likelihood that a motion for a new trial would have been

granted." ECF Doc. 12-4 at 381. Accordingly, Petitioner cannot show counsel was deficient, or that he was prejudiced, when counsel declined to make a motion that was sure to be denied.

### C.    Ground Three: IATC For Failing to Make a Motion for Judgment of Acquittal During the Trial.

Similarly, no reasonable judge would have granted a motion for judgment of acquittal at the close of the State's case. Under Florida law, "[a] motion for judgment of acquittal should only be granted if there is no view of the evidence from which a jury could make a finding contrary to that of the moving party." *Jeffries v. State*, 797 So. 2d 573,580 (Fla. 2001). "'Because conflicts in the evidence and the credibility of the witnesses have to be resolved by the jury, the granting of a motion for judgment of acquittal cannot be based on evidentiary conflict or witness credibility.'" *Johnson v. State*, 2018 WL 2399428, *4 (Fla. 1st DCA ay 25, 2018) (quoting *Sapp v. State*, 913 So. 2d 1220, 1223 (Fla. 4th DCA 2005)).

Here, as stated above, the State presented evidence that through K.H.'s testimony and the Petitioner's jail house calls that Petitioner's hands were inside K.H.'s pullup. That evidence was sufficient for the jury to make a finding of guilt, and certainly raised a question of fact for the jury as to whether Petitioner was guilty of lewd and lascivious conduct. Therefore, counsel was not ineffective for declining to make a motion for judgment of acquittal.

**D.    Ground Four: IATC During Opening Statements for Conceding Guilt and for Informing the Jury That the Petitioner Was Going to Testify, Thereby Interfering with the Petitioner's Right to Testify**

Petitioner claims his counsel conceded guilt during opening statement by informing the jury about the jailhouse calls and telling the jury Petitioner was going to testify but then not calling Petitioner to testify.  As the circuit court determined, Petitioner is not entitled to relief on this claim.

First, defense counsel never conceded guilt in the opening statement.  Instead, counsel made the same argument to the jury that Petitioner made to K.H.'s grandmother on the phone -- that the touching happened while he asleep and was inadvertent.  Regardless, counsel's statements did not prejudice Petitioner because counsel simply wanted to be able to explain the calls before the jury heard about them during the trial.

Petitioner also has not shown that counsel's promise to the jury that Petitioner would testify and subsequent decision not to testify was the result of ineffective assistance of counsel.  As Petitioner explained in open court, he did not feel he needed to testify because the evidence presented to the jury included what he would have told the jury – namely, that he woke up with his hands between the child's legs. ECF Doc. 12-4 at 10.  Therefore, the jury was not left with the impression the defense had promised certain evidence but had not delivered.  Thus, Petitioner was not prejudiced by his failure to testify.

Moreover, as the state court found, given the evidence presented, there is not a "reasonable probability that the result of the proceeding would have been different had defense counsel not remarked in opening statement that the Defendant would testify at trial." ECF Doc. 12-5 at 172. Petitioner is not entitled to relief on Ground Four.

**E.    Ground Five:  IATC For Failing to Adequately Cross-Examine the Victim's Grandmother During Trial**

Petitioner claims counsel's cross-examination of the grandmother "was not very beneficial to the defense and primarily served to reinforce the State's assertions against the Defendant." ECF Doc. 12-4 at 177. Petitioner insists counsel should have elicited testimony from the grandmother about her conduct after the incident to show she was clearly anxious to get rid of the Petitioner, which would have motivated her inculpatory testimony. The state court did not err in finding a lack of prejudice.

First, much of the testimony Petitioner claims should have been solicited from the grandmother was provided by other witnesses. In opening statement, the Defendant's counsel informed the jury the grandmother and the Defendant had been boyfriend/girlfriend for about three years and were living together when the offense allegedly occurred, but the grandmother married someone else "early this spring." ECF Doc. 12-3 at 172. The jury heard testimony, through direct examination, cross-examination, and re-direct, that in the days after the Defendant was arrested and

while he remained in jail, the grandmother went on a trip to Biloxi and took the Defendant's truck, motorcycle and belongings to Dothan, Alabama. ECF Doc. 12-3 at 370. The jury also heard testimony that the alleged lewd and lascivious molestation occurred on May 25, 2014, and the grandmother married in February 2015. *Id.* at 379. Despite having heard this evidence, the jury found Petitioner guilty.

Accordingly, Petitioner cannot establish prejudice and Ground Five is due to be denied as he has failed to meet the second prong of *Strickland*.

### F.   Ground Six: IATC For Failing to Object and Move for a Mistrial Due to Improper Arguments Made by the State During Closing Arguments

Petitioner argues the prosecutor made the following improper comments during closing argument: (A) during rebuttal, the prosecutor stated the victim "said in uncontroverted testimony the defendant rubbed my tee-tee, finger skin on her tee-tee, which is consistent with a touch;" (B) during rebuttal, "I didn't hear any testimony that she conflates details about what went on;" (C) "I would submit to you that you heard no evidence that touch DNA could come from a wet pullup;" and (D) "there was no one to come in and testify what [Defendant] was thinking when he touched the child." Petitioner contends these comments "clearly were susceptible of being interpreted as comments on the Defendant's silence and were not harmless beyond a reasonable doubt because the Defendant chose not to testify, the evidence against him was not overwhelming, and the comments improperly shifted the burden

of proof to the Defendant…."  He argues had counsel objected, there is a reasonable likelihood the outcome of the trial would have been different because the State's comments so infected the integrity of the trial as to undermine any reasonable confidence in the outcome.

As the state court found, the prosecutor's comments did not improperly shift the burden of proof.  In his closing, defense counsel argued the victim's "story changed with the retelling."  ECF Doc. 12-4 at 21.  The prosecutor countered this argument by reminding the jury of what they did not hear, which was any testimony from the victim that she yelled at Petitioner to stop or that he was asleep.  A prosecutor's comment on the lack of evidence is not improper when, as it was here, directed merely at rebutting Defendant's own closing argument.  *United States v. Martinez*, 146 F. App'x 450, 456 (11th Cir. 2005) ("while a prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof, it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, 'particularly when done in response to a defendant's argument" in his closing argument.).

Petitioner's argument that the prosecutor's comments were impermissible references to his decision not to testify fares no better.  "The test for determining whether a prosecutor's remark constitutes an impermissible comment on a defendant's failure to testify is whether 'the statement was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a

comment on the failure of the accused to testify.'" *United States v. Carter,* 760 F.2d 1568, 1578 (11th Cir.1985) (quotation omitted). "[T]he question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so." *Id.*

As the state court noted, the prosecutor's comment focused on the fact that the victim's testimony was consistent over time and not contradicted by anything else in the trial; it did not necessarily lead the jury to consider the Petitioner's decision not to testify. Indeed, since defense counsel specifically referenced the Petitioner's story to the grandmother, the prosecutor was not commenting on Petitioner's silence at all; he was rebutting Petitioner's contentions, through the jail call recordings, that he thought this was an accident that got embellished by the mother. Even the Petitioner conceded he did not need to testify because he got his points across through the phone calls and other recordings.

As to the comment about the DNA, defense counsel had argued that "certainly a diaper, certainly a diaper, a pullup can have touch DNA" and chastised the investigators for not retaining the pullup and having it tested. ECF Doc. 12-4 at 22. The prosecutor's comments that "you heard no evidence that touch DNA could come from a wet pullup" simply rebutted defense counsel's closing argument, in which he presented a theory not based on facts in evidence.

Finally, the comment by the prosecutor that "there was no one to come in and testify what Mr. Parris was thinking when he touched the child" would not

necessarily lead the jury to believe it was a comment on the decision of Petitioner not to testify.  As the state judge noted, the State was commenting on its own inability to bring in a witness as to what Petitioner was thinking, not Petitioner's inability to do so.  The prosecutor then went through the other testimony that tended to show Petitioner was acting lewdly and lasciviously, such as the kissing that was alleged, the comment that he loved her, the placement of the hand inside the pajamas and pullup, and his instruction not to tell anyone.  The jury would not necessarily see this as a comment on a failure to testify but instead would more likely see this as showing how the State could meet element two of the offense in ways other than attempting to read the Petitioner's mind.

Moreover, given the weight of the evidence described above, the Petitioner was not prejudiced by the improper comments.  "Failure to object to improper prosecutorial argument rarely amounts to ineffective assistance of counsel[.]" *Mungin v. Sec'y, Fla. Dep't of Corr.*,  2022 WL 3357672, at *24 (M.D. Fla. Aug. 15, 2022) (quoting *Lara v. State*, 528 So. 2d 984, 985 (Fla. 3rd DCA 1988) (per curiam)).  The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  Here, the state court was not unreasonable in finding that the comments were simply permissible

responses to arguments made by the defense and did not so infect the trial with unfairness as to deny due process.

Therefore, the comments were neither burden-shifting nor impermissible references to the Petitioner's decision not to testify, and counsel was not ineffective for failing to object or move for mistrial.  Petitioner is not entitled to habeas relief on this claim.

### G.  Ground Seven: IATC for Failing to Investigate and Call as a Witness Petitioner's Stepfather to Testify

In Ground Seven, Petitioner alleges his counsel was ineffective for failing to investigate and call as a witness Petitioner's stepfather who would have testified Petitioner "was hard of hearing," "sleeps with his eyes partially open, which makes it appear that he is awake when he is really asleep," and "always falls asleep quickly and routinely falls asleep in the recliner."  According to Petitioner, this testimony would have supported Petitioner's theory the child mistakenly thought Petitioner was awake when his hand ended up between her thighs.

The state court found that counsel was not ineffective because the fact that Petitioner was hard of hearing had been established by the playing of his post-arrest statement to Dr. Schubert, so the testimony would have been cumulative.  Also, given K.H.'s testimony that Petitioner was awake, Petitioner cannot demonstrate prejudice.  The stepfather was not a witness to the alleged offense.  Petitioner is not entitled to relief on Ground Seven.

### H.    Ground Eight: IATC For Failing to Adequately Cross-Examine the Victim by Impeaching Her with Her Deposition Testimony and by Failing to Elicit Critical Testimony from the Deposition

Petitioner claims counsel was ineffective for failing to impeach the victim with her statement in deposition that she sat in Petitioner's lap 3-5 minutes while at trial she said it was 10 minutes.  Also, he claims counsel should have elicited the following testimony from her deposition that did not come out at trial: (1) she stated at deposition she was at home when her mom first asked her about the abuse, but at trial her mother said it was in the car and (2) when asked in deposition why she had not told of the abuse sooner, she stated she forgot until her mother asked her about it.  Petitioner insists counsel was deficient and he was prejudiced by the failure to bring out these points in cross-examination of the victim.

The state court denied relief because there is not a reasonable probability that this additional evidence would have resulted in an acquittal.  The undersigned agrees.  Given the general overall consistency in the victim's CPT interview, her deposition, and her trial testimony, the minor discrepancies noted by Petitioner do not create a reasonable probability that, but for the deficiency in failing to elicit this discrepancy or to elicit the victim's statements in deposition, the result of the proceeding would have been different.  Petitioner therefore cannot meet the second prong of *Strickland* and is not entitled to habeas relief on this Ground.

I.    **Ground Nine: IATC For Failing to Adequately Cross-Examine the Victim's Mother About the Sleeping Arrangements**

Petitioner claims counsel was ineffective for failing to elicit from K.H.'s mother on cross-examination that her sister's 2-year-old child was asleep on the only couch in the living room.  Petitioner argues this would have bolstered his defense that the child fabricated the story because she originally said the molestation occurred on the couch, not the chair, and that would not be possible with a child sleeping on the couch.

Applying *Strickland*, the state court correctly concluded that Petitioner could not show prejudice.  First, Petitioner admitted in his recorded interview and phone calls that he and the victim were cuddling or snuggling in the recliner – not the couch. Second, although the victim initially testified the incident occurred in the middle of the couch, not the recliner, ECF Doc. 12-3 at 268, she corrected herself on cross-examination by stating they were in the rocking recliner chair[5] and not the couch. *Id.* at 284.  Third, considering all the evidence described above, there is not a reasonable probability that, but for this failure to introduce evidence that another child was asleep in the room at the time of the offense, the result of the proceeding would have been different.  Accordingly, Ground Nine should be denied, as he has failed to meet the second prong of *Strickland*.

---

[5] The grandmother testified that K.H. and her mother often called the recliner a rocking chair.  *Id.* at 381.

**J.     Ground Ten: The Cumulative Effect of Counsel's Deficient Performance**

Finally, Petitioner argues the cumulative effect of counsel's errors prejudiced him in violation of *Strickland*.  A court "address[es] claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial."  *United States v. Chalker*, 966 F.3d 1177, 1193 (11th Cir. 2020) (quoting *United States v. Margarita Garcia*, 906 F.3d 1255, 1280 (11th Cir. 2018)).  Where no errors are demonstrated in the trial court's rulings, "we are left with no errors to accumulate."  *Chalker*, 966 F.3d at 1193.  Thus, because each individual ground asserted by Petitioner fails, this ground likewise fails and should be denied.  *See, e.g.*, *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative error because none of Morris's individual claims have any merit and "therefore we have nothing to accumulate").  Additionally, the undersigned has considered the effect of all the decisions of trial counsel complained of by Petitioner, and, in light of the substantial evidence supporting the finding of guilt, there is no probability of a different outcome even if the impact of all the actions of counsel are considered together.  Thus, Petitioner is not entitled to habeas relief on this claim.

## IV.   CONCLUSION

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).   Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.*   Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is

also recommended that the district court deny a certificate of appealability in its final

order.

The second sentence of Rule 11(a) provides: "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to

this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and

recommendation.

Accordingly, it is also respectfully RECOMMENDED:

1.     That the petition under 28 U.S.C. § 2254, challenging the conviction in

*State v. Parris*, 2014-CF-1736, in Bay County, Florida, ECF Doc. 1, be DENIED

without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk be directed to close the file.

At Pensacola, Florida, this 14th day of November, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.